**STATE of Missouri, Respondent,**

v.

**Bert L. HUNTER, Appellant.**

No. 72521.

Supreme Court of Missouri,
En Banc.

Oct. 27, 1992.

As Modified on Denial of Rehearing
Nov. 24, 1992.

Dave Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., John Morris, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

On March 28, 1989, defendant Bert Leroy Hunter was indicted on two counts of first degree murder, § 565.020.1, and one count of first degree robbery, § 569.020.[1] Although represented by counsel at all other relevant court proceedings, defendant was permitted to act as counsel *pro se* at a hearing on July 21, 1989. On that date he entered a plea of guilty to all three charges. On February 15, 1990, he was sentenced to death for the murders. Defendant was sentenced to life in prison for first degree robbery. He filed a post-conviction motion pursuant to Rule 24.035. That motion was overruled. Both judgments were appealed. The appeals have been consolidated. Because the trial court imposed the death penalty, this Court has jurisdiction. *Mo. Const. art. V, § 3.*

The points relied on are not a model of clarity. With a few exceptions, the points fail to comply with Rule 84.04(d). As best can be perceived, the issues on appeal include the voluntariness of defendant's waiver of counsel, the voluntariness of and factual basis for the defendant's plea of guilty, alleged errors in the sentencing procedure, a claim of bias by the trial judge who accepted the plea and sentenced the defendant, claims of ineffective assistance of counsel, and the proportionality of the death sentence. Ordinarily, appellate review of guilty pleas is extremely narrow. However, § 565.035.2 requires this Court in death penalty cases to consider the punishment and "any errors enumerated by way of appeal." The judgments are affirmed.

## FACTS

The facts leading up to the filing of charges have been gleaned from the plea of guilty proceeding and from the record at the sentencing hearing.[2] On the afternoon of December 15, 1988, defendant and an accomplice, Tomas Ervin, carried out a plan to rob Richard Hodges at his home on Boonville Road in Jefferson City. Defendant and Ervin believed Hodges kept large amounts of cash in a file cabinet in his home. With a pistol in his pocket, defendant knocked on the Hodges' door. Richard's mother, Mildred Hodges, answered. Defendant then pulled a stocking mask down over his face and, entering the house, grabbed Mrs. Hodges by the hand. He held a gun in the other hand. Mrs. Hodges became very excited and cried out for her son, Richard. Richard came into the room where they were standing, telling the two assailants to leave Mrs. Hodges alone because she had just returned home after heart surgery. As Richard attempted to calm his mother, Ervin and defendant began binding her hands and feet with duct tape. She was made to lie down on a bed in a back bedroom. Ervin took Richard to the living room and made him lie on the floor. Ervin began taping Richard's hands. At the same time, defendant was searching the house for money and other valuables. Meanwhile, Mrs. Hodges managed to get free and ran into the living room where Ervin was still taping Richard's hands. She pulled the mask off Ervin, causing him to fall back on the floor. Ervin called out defendant's first name. Defendant returned to the living room and saw what had occurred. Once the mask was pulled off Ervin and Hunter's name was called out, defendant and Ervin made a mutual decision that both the Hodges were to be killed.

Mrs. Hodges attempted to flee. Defendant and Ervin caught Mrs. Hodges in the hallway, forcing her to the floor. According to defendant, she hit the wall, bloodying her nose. A rush of air came out of her and she became still. The two then returned to finish taping Richard. They placed tape over Richard's mouth and nose. Plastic bags were placed over the heads of both victims. Hunter admitted that after

---

1. References to statutes are to RSMo 1986 unless otherwise noted.

2. A somewhat different statement of facts is found in *State v. Ervin,* 835 S.W.2d 905 (Mo. banc 1992).

the plastic bags were placed on the victims' heads, he held Richard's nose to suffocate him. While defendant was dealing with Richard, Ervin was "working with Mrs. Hodges," although defendant surmised there was "nothing to do, anyway." Ervin returned and told defendant that he thought Mrs. Hodges was dead. Defendant checked Mrs. Hodges and determined that she had no pulse. The two then finished looking through the house and left. They returned to the house at least once that evening or the next evening.

## PROCEDURAL HISTORY

The indictment was filed on March 28, 1989, charging two counts of first degree murder and one count of first degree robbery. From the outset defendant had appointed counsel. However, he indicated to his lawyer that he wanted to plead guilty at the initial arraignment. The lawyer prevailed on defendant to wait until after a mental examination was conducted. As a result, the docket entry at the April 4, 1989, arraignment showed "defendant stands mute as to his plea, and a plea of not guilty as to all three counts is entered on behalf of defendant by the court ... Mental Examination ordered." A psychiatric examination report was filed with the court on July 6, 1989.

A hearing was scheduled on a motion for change of venue and objections to the psychiatric report on July 17, 1989. At that time the trial judge was informed that defendant and his lawyer were in disagreement as to how to proceed because defendant wanted to plead guilty. The matter was continued to July 21, 1989.

At the beginning of the July 21 hearing, defendant again expressed his desire to plead guilty notwithstanding counsel's advice to the contrary. Defendant thereafter was permitted to represent himself, and he entered a plea of guilty to each of the three charges. The court made findings that the right to jury trial at both the guilt and sentencing phases were knowingly, intelli-

gently and voluntarily waived and that the plea of guilty was also entered into voluntarily, intelligently and with full understanding of the charges and consequences of the plea. The trial judge also found there was a factual basis for the pleas of guilty. The pleas were accepted. A second psychiatric report and a presentence investigation were ordered. Those were filed on September 13, 1989.

On September 29 defendant, through the same attorney who represented him in previous proceedings, filed various motions and objections. On October 18, 1989, the same attorney filed a motion to withdraw the pleas of guilty. Defendant at a hearing on motions on November 7, 1989, confirmed that defense counsel was representing him on the motions. The motion to withdraw the plea of guilty was overruled.

On February 15, 1990, the sentencing phase hearing was held. At the close of the hearing the trial judge specifically stated he was "not impressed" with the mitigating evidence and that he found specific aggravating circumstances. The defendant was sentenced to death on the two murder charges and to life imprisonment on the robbery charge.

A *pro se* motion for post-conviction relief pursuant to Rule 24.035 was filed on April 25, 1990. A timely amended motion was filed on June 29, 1990. Following an evidentiary hearing, the post-conviction judge filed findings of fact and conclusions of law on July 24, 1991, denying defendant any relief. The appeal from that judgment was consolidated with the direct appeal. More detailed facts relating to the proceedings will be developed in relation to the points raised.

## I. Voluntariness of the Waiver of Counsel

At a hearing on pretrial motions on July 17, 1989, the trial judge was informed that defense counsel and defendant did not see "eye to eye" on how to proceed. Defense counsel wanted to proceed on the motions

in preparation for trial. Defendant informed the trial judge he had "been trying to plead guilty from day one" but had been dissuaded by his attorney pending the outcome of the psychiatric evaluation, which defendant considered to be "a joke." If the lawyer was going to press for a trial, defendant stated, "[T]hen I'll have to get another lawyer." The trial judge decided to allow additional time to permit defendant and his attorney to reconcile their differences and for defendant to talk with family, friends, or clergy. The court also offered to obtain a psychiatrist to visit with defendant before a plea of guilty would be taken up, although the trial judge believed defendant to be acting rationally. Defendant declined further evaluations, saying he just wanted to "get this [ ] over with."

On July 21, 1989, defendant again appeared before the trial judge. Again, after confirming a "difference of opinion" between defendant and his attorney, Donald Catlett, as to whether to plead guilty, the trial judge asked, "[D]o you want to fire Mr. Catlett?" Further discussion ensued, which included the following:

> THE COURT: Now, do you want to waive the right to have an attorney represent you in this matter, and represent yourself?
>
> DEFENDANT HUNTER: That would be fine. That would be faster.
>
> THE COURT: Now, you understand that's fraught with peril? I've never known—well—
>
> DEFENDANT HUNTER: My life is fraught with peril. That's no problem. I somewhat understand it.
>
> THE COURT: So you're telling me that you wish to waive your right to have an attorney present with you at this time?
>
> DEFENDANT HUNTER: Right.
>
> . . . .
>
> THE COURT: I want you to understand another thing. You aren't really going to say what happens to you. If I accept your plea, I'm the one that's going to determine what happens to you.
>
> DEFENDANT HUNTER: I understand that, too.
>
> THE COURT: All right. And you understand that I have sentenced people to death before?
>
> DEFENDANT HUNTER: Oh, you should.
>
> THE COURT: Well, and it doesn't bother me in the least. You understand that?
>
> DEFENDANT HUNTER: Nor me, either.
>
> THE COURT: All right. Mr. Catlett, I'm going to allow him to represent himself. And I want you present in case he has any questions that I'm not covering that he may discuss with you. You're not going to be bound by what he does here.

The court then engaged in an extensive inquiry to determine if the defendant's decision to proceed against the advice of counsel and to plead guilty was voluntary, intelligent, and knowing.

Defendant makes two primary complaints regarding the waiver of counsel. The first is that the waiver of counsel is inadequate to conform with the due process requirements of the United States Constitution as set out in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The second complaint is that the court failed to obtain a written waiver of counsel, as required by § 600.051.

### A.

■ For a waiver of counsel to be effective, due process requires that the waiver be made knowingly and intelligently. *Faretta v. California*, 422 U.S. at 835, 95 S.Ct. at 2541; *Wilkins v. State*, 802 S.W.2d 491, 501 (Mo. banc), *cert. denied*, — U.S. —, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991). A waiver of counsel may be less than a full waiver, as occurred here, where defendant is provided "standby" or "hybrid" counsel. *Faretta*, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541, n. 46. De-

fendant directs our attention to several factors which, he argues, demonstrate that his waiver of counsel was ineffective.

He first claims that Judge Kinder's question, "Do you want to fire [defense counsel]?" was, in effect, an effort to goad defendant into waiving counsel. However, that question cannot be read in isolation from the rest of the record. Both at the hearing on July 17 and at the July 21 hearing, where defendant was permitted to proceed *pro se*, Judge Kinder repeatedly encouraged defendant to reconcile his differences with defense counsel and follow counsel's advice. Judge Kinder delayed the plea of guilty hearing for the purpose of giving the defendant the opportunity to further confer with counsel. Judge Kinder proceeded only after confirming that the disagreement between counsel and defendant had been one of long standing and that defendant had wanted to plead guilty from "day one" and had not done so only because counsel urged that he first undergo a psychiatric examination. At the July 21 hearing the judge again asked if any delay for discussions would help reconcile defendant and his lawyer as to how to proceed. The response was that further discussions would be futile. The conclusion that Judge Kinder's single comment had the effect of "goading" defendant to waive counsel is not supported by a fair reading of the entire record.

■■■ Defendant also asserts that Judge Kinder failed to engage in a thorough examination of defendant to ensure the waiver of counsel was knowing and intelligent. In support of that, the brief argues that the post-conviction court and this Court may only consider matters inquired into prior to the time Judge Kinder said, "I'm going to allow him to represent himself." The argument fails to acknowledge the obvious fact that at any time up until the plea of guilty was finally accepted, defendant could have asked for and received full representation without prejudicial effect. The argument that a motion court may not consider the whole record before it at the hearing on the day the waiver of counsel occurred is unsupported by precedent or sound reason. The test for determining if the waiver is made intelligently and knowingly depends on the "particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Wilkins v. State,* 802 S.W.2d at 501. Defendant's knowledge of all relevant facts need not appear in the trial record to support a finding that the waiver of counsel was proper. *State v. Gilmore,* 697 S.W.2d 172, 174–75 (Mo. banc 1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). To limit the focus of the inquiry to what a defendant said just before the waiver of counsel was permitted would forbid the broad inquiry necessary to a fair assessment of whether defendant knew and appreciated what he was doing when he waived his right to counsel. The claim is rejected.

Defendant also asserts that Judge Kinder failed to engage in a thorough examination of defendant to ensure the waiver of counsel was knowing and intelligent. Again, defendant relies on an isolated question and answer to support this contention. The particular response occurred when defendant stated he "somewhat" understood that representing himself was fraught with peril. Again, if that constituted the entire record, the argument might be persuasive. However, the record we consider in determining if there was a valid waiver of counsel and plea of guilty involved hearings on two separate dates, a transcript of over 100 pages, and the psychiatric and psychological reports that are before us. In the course of reading these records it is apparent that defendant at all times understood the charges and the range of punishment, that he understood his right to representation at all critical stages and did not desire to be represented by counsel at the guilty plea proceeding. He was informed of lesser included offenses and the possibility of punishment for those offenses, possible defenses and other facts having a bearing on the admissibility of his own statements and

on the essential mental states for a determination of guilt. He understood his right to jury trial at both the guilt and punishment phases. He also knew and understood that a reasonable likelihood existed that he would receive the death penalty or life imprisonment if he pled guilty or was found guilty, and that no promises made by any other officials were binding on the judge. Clearly, the defendant understood the judge, the right being waived, the choices being made, and had the capacity to think logically at the time he waived counsel.

■ Incident to these claims, defendant argues that the plea was not voluntary because trial counsel had not informed defendant of the State's evidence, an autopsy report that Richard Hodges was strangled around the neck, and the fact that some hair samples at the scene matched neither defendant nor Thomas Ervin. Hunter admitted during the plea hearing that during the struggle he may have had his hands around the neck of Richard Hodges. There is no indication that if defendant would have known about either of these items of evidence he would not have pled guilty.

■ Defendant also takes issue with the motion court's reliance on defendant's experience in the criminal justice system dating back to the 1960's, claiming that Judge Kinder had none of that evidence before him. The claim is simply unsupported by the record. At the hearing on July 21, 1989, defendant brought to Judge Kinder's attention the fact that he had a prior felony conviction. Defendant admitted he had been involved with the criminal justice system on several prior occasions. In addition, in count III of the indictment to which defendant pled guilty, he was charged as a persistent offender for having four prior convictions of felonies. While not conclusive on the question of defendant's knowledge of a right to counsel, prior contact with the criminal justice system is certainly a factor that Judge Kinder and Judge McHenry, the post-conviction judge, could consider in reaching their conclusions regarding whether the waiver was made knowingly and intelligently. In sum, the trial court did not err and the motion court's judgment was not clearly erroneous in concluding that the waiver of counsel was made knowingly and intelligently.

### B. Compliance with Section 600.051.1

■ Defendant argues vigorously that reversal is required because Judge Kinder failed to obtain a written waiver of counsel as is required by § 600.051. A preliminary question is whether the issue has been properly preserved. Defendant was fully represented at all relevant court proceedings both before and after the plea of guilty. In defendant's motion to withdraw the guilty plea filed October 18, 1989, no mention was made of the absence of a written waiver of counsel or of § 600.051. During the hearing on motions on November 7, 1989, and at the sentencing phase trial on February 15, 1990, no mention was made of the absence of a written waiver.

The first mention of § 600.051 was in defendant's motion for post-conviction relief, where defendant claims the trial court violated that statute by failing to have him sign a waiver of counsel. No explanation was given as to why that issue was not raised before the original trial judge. In addition, the Rule 24.035 motion made no claim that defense counsel was ineffective for failing to raise the absence of a written waiver of counsel. The claim that defense counsel was ineffective for failing to raise the § 600.051 claim appears for the first time in the brief on appeal.

■ In a capital case this Court is required to review all errors enumerated in the direct appeal from the conviction. § *565.035.2*. However, the standard of review to be applied is dependent upon whether the issue is properly preserved. Issues not preserved by objection before the trial court are not subject to review except for plain error. *State v. McMillin*, 783 S.W.2d 82, 95 (Mo. banc), *cert. de-*

nied, —— U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Here no objection was made to Judge Kinder's failure to obtain a written waiver of counsel although defendant had ample opportunity to do so in his motion to withdraw the plea filed October 18, 1989, or at other times prior to the judgment of conviction on February 15, 1990. Unquestionably defendant and his counsel knew that no written waiver had been signed. Thus the standard for reviewing the claim on direct appeal is that of plain error.

■■■ Issues about which defendant and his counsel knew and which could have been raised at trial and by direct appeal may not be raised by post-conviction motion. *Rodden v. State,* 795 S.W.2d 393, 395 (Mo. banc 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991); *Johnson v. State,* 729 S.W.2d 654, 657 (Mo.App.1987). Inasmuch as defendant had an opportunity to raise the issue of failure to obtain a written waiver of counsel before the original trial judge, the question may not be reviewed by a post-conviction proceeding.

■ In *Peterson v. State,* 572 S.W.2d 475 (Mo. banc 1978), a defendant by post-conviction motion sought to vacate an eight-year burglary sentence because the trial court had failed to exact a written waiver of the right to assistance of counsel. This Court felt compelled to insist on strict compliance with the statute, holding that failure to use the written form mandated reversal, even in the absence of prejudice. *Id.* at 477. In contrast to the case now before the Court, Peterson had neither standby counsel nor was he fully represented by counsel in a hearing on a motion to withdraw his plea of guilty or at his sentencing prior to judgment of conviction.

Notwithstanding the inflexible rule stated in *Peterson,* this Court has since found at least one exception to the requirement of a written waiver of counsel. In *May v. State,* 718 S.W.2d 495 (Mo. banc 1986), the defendant objected to the appointment of counsel and asserted his desire to conduct his own defense. The trial judge had a written form waiving counsel prepared and read into the record, but defendant refused to sign the form. The judge designated an assistant public defender to act as "standby" counsel and proceeded with the trial. The defendant was convicted and subsequently filed a post-conviction proceeding. The Court refused to apply the strict rule enunciated in *Peterson,* concluding that "[o]ur holding accords with the purpose of § 600.051, which is to provide objective assurance that the defendant's waiver is knowing and voluntary.... To hold otherwise would permit a form of gamesmanship which might seriously interfere with trial proceedings." *May,* 718 S.W.2d at 497.[3]

Each district of the Missouri Court of Appeals, when confronted with a case where a defendant has had "hybrid" counsel, has concluded that the requirements of § 600.051 are inapplicable, and no written waiver of counsel is required. *State v. Tyler,* 587 S.W.2d 918, 923 (Mo.App.1979); *State v. Johnson,* 586 S.W.2d 437, 443 (Mo.App.1979); *State v. Edwards,* 592 S.W.2d 308, 312 (Mo.App.1979). *See also State v. McGee,* 781 S.W.2d 161, 162 (Mo.App.1989). These cases are founded on the principle that one who has "standby" counsel or "hybrid" counsel has the aid and assistance of an attorney and has not actually waived counsel. *Johnson,* 586 S.W.2d at 443. The failure to obtain the written waiver of counsel is not plain error. *State v. Harper,* 637 S.W.2d 170, 173 (Mo.App.1982).

■■ Having said that, trial courts are cautioned, as they were in *May,* to obtain written waivers of counsel whenever a defendant expresses a desire to act with less than full representation and is willing to sign such a form.

---

**3.** While there is dictum in *May* to the effect that an express written waiver was prudent unless the defendant had full representation by coun- sel or refused to sign such waiver, that was not the holding of the *May* case.

## II. Voluntariness of the Plea of Guilty

█ A plea of guilty to a criminal offense is a solemn act requiring care and discernment. The gravity of such act is elevated in a case where the plea of guilty is entered against counsel's advice, as it was here. A plea of guilty involves not only an admission of guilt but a consent to judgment of conviction without benefit of a jury trial. For these reasons, a plea of guilty must not only be a voluntary expression of the defendant's choice, it must be a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

Defendant points to a series of factors, which he claims mandate that the plea of guilty be set aside. Among these are the claims that defendant had a mistaken belief that he had a constitutional right to plead guilty, that defendant was not competent to plead guilty because he was suffering from a severe mental depression, that the plea of guilty was coerced by defendant being held in isolation in prison, and that defendant was not properly informed of his right to jury trial at the punishment phase.

### A.

█ At the July 17, 1989, hearing, the following statements were made by Judge Kinder:

Well, Mr. Hunter, I'll tell you right now, you've got a constitutional right to plead guilty if that's what you want to do.
. . . .

If the man wants to plead guilty and he does so willingly, Mr. Catlett, that ought to be his judgment. He has a right to exercise his constitutional rights. . . .

On July 21, 1989, the following exchange occurred between defendant and Judge Kinder:

THE COURT: All right. Now, you and Mr. Catlett have had a difference of opinion. He indicates to me that he doesn't want you to [plead guilty].

DEFENDANT HUNTER: Well, but, you know—

THE COURT: You're putting him in a very awkward position. Now he can't represent you if he's not going to do what he thinks is in your best interest.

DEFENDANT HUNTER: Well, but don't I have a choice in it?

THE COURT: Yes, you do have a choice in it. But the question is, I don't want to put him in a position of representing you when what he's saying you're doing is wrong.

DEFENDANT HUNTER: How does he know what's wrong?

THE COURT: Well, that's his job. He is your lawyer and he's supposed to be looking after your best interests.

DEFENDANT HUNTER: But don't I have a constitutional right to plead guilty?

THE COURT: I believe you do, sir.

DEFENDANT HUNTER: I have a constitutional right—

THE COURT: But you can't do that. Do you want to fire Mr. Catlett?

DEFENDANT HUNTER: If that's what it takes. Will that stall the thing, too?

THE COURT: No, no, not necessarily.

Defendant now argues that the statements by Judge Kinder regarding defendant's constitutional right to plead guilty were erroneous statements of law. Defendant relies on *State v. Meaney*, 563 S.W.2d 117 (Mo.App.1978), and *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Defendant argues his plea of guilty was induced by the mistaken belief that he had such a constitutional right. The two cases relied on by the defendant do not hold that a defendant has no constitutional right to make a voluntary plea of guilty. Those cases hold that there is no absolute or constitutional right to require a court to *accept* a plea of guilty. *Santobello*, 404 U.S. at 262, 92 S.Ct. at 498; *Meaney*, 563 S.W.2d at 118.

Unquestionably, a person charged with a crime has a right to self-representation, and neither defense counsel nor the court may impose their will on a person who desires not to be represented. *Faretta,* 422 U.S. at 836, 95 S.Ct. at 2541. The statements of Judge Kinder, taken in the context of the record, were no more than an effort to ensure that the defendant knew he had a constitutional right to make his own strategic decisions regarding the case, even if those decisions are ultimately to his own detriment and contrary to what a skilled and experienced attorney might recommend. *Faretta, supra.* While it is true that a defendant has no constitutional right to be informed that he could reject counsel's advice and representation, it is equally true that Judge Kinder was under no duty to keep such information a secret from defendant. In addition, defendant's decision to plead guilty in this case was not a product of the judge's statements. Defendant's statements make it clear that the decision to plead guilty predated the July hearing before Judge Kinder by many months.

### B.

■ As previously noted, a psychiatric examination report was filed on July 6, 1989. While it indicated defendant had been cooperative in some aspects of the evaluation, he had not cooperated with the psychiatrist. As a result, the psychiatric evaluation was incomplete. Nevertheless, the report indicated that defendant was of at least average intelligence, had an "antisocial personality disorder", and had abused cocaine. It also indicated that there was no psychotic disorder and that defendant was currently capable of assisting in his own defense.

A second psychiatric examination was conducted on August 23, 1989, by Dr. Sam Parwatikar. Among other findings, Dr. Parwatikar found defendant's understanding of the legal situation to be impeccable, that he was functioning at the "bright-average" range of intelligence, and that

defendant was well-oriented and understood the functions and characters involved in the judicial system. He concluded that defendant was capable of entering a voluntary plea of guilty and suffered no mental disease or defect within the meaning of chapter 552.

Following the filing of the motion to withdraw the plea of guilty, a hearing was conducted on November 7, 1989. At that hearing, Lee Evans, a doctor of pharmacology with a specialty in psycho-pharmacy, testified. He had taken a history from defendant indicating daily cocaine use for about a year preceding the arrest in February of 1989. Dr. Evans opined that defendant's withdrawal from extended use of cocaine could have resulted in a severe depression and possibly affected defendant's ability to make a rational decision to plead guilty. Dr. Evans admitted that neither in his experience nor in the literature had he seen any case that would support a claim of severe depression induced by cocaine withdrawal which extended longer than three or four months after the use of the drug had ceased. On this evidence, the trial court did not err in failing to find defendant incompetent to enter his plea.

The trial judge did not err by accepting the guilty plea before the results of the second mental exam were received. The judge noted that defendant appeared rational at the hearing on July 17, 1989, and at the plea of guilty hearing. The results of the second exam, results which were before the judge at the hearing to withdraw the guilty plea, confirmed that defendant was competent to enter the plea.

In the post-conviction proceeding Dr. William O'Connor, a clinical psychologist, testified. He was of the opinion that the defendant's cocaine abuse and solitary pretrial confinement caused defendant to suffer severe depression. He was also of the opinion that at the time of the plea of guilty, the severe depression was a mental disease within the meaning of Chapter 552, RSMo. However, in cross-examination, Dr. O'Connor acknowledged that during the guilty

plea, defendant was not retarded, not out of touch with reality, and not unable to think logically.

 The standard for determining a defendant's competence to plead guilty is essentially the same as that for determining if a defendant is competent to proceed to trial. *Wilkins v. State,* 802 S.W.2d at 502. Taken as a whole, the evidence before the post-conviction court justified a finding that defendant did not suffer from a mental disease or defect of sufficient magnitude to deprive defendant of the "capacity to understand the proceedings against him or to assist in his own defense." § *552.020.1.* The fact that a defendant was suffering from depression when a plea of guilty was entered does not necessarily render him incompetent to plead guilty. *Simpkins v. State,* 766 S.W.2d 729, 731 (Mo.App.1989). An accused is competent to stand trial or plead guilty if he can rationally consult with counsel and the court and understands the proceedings against him. *Newbold v. State,* 492 S.W.2d 809, 818 (Mo.1973). The post-conviction judge had before him the psychiatric reports as well as the videotape showing defendant's statements, conduct and demeanor during the plea of guilty. The post-conviction court was entitled to believe all, part, or none of the evidence presented at the post-conviction hearing. *State v. Hurtt,* 509 S.W.2d 14, 16 (Mo.1974). The post-conviction finding that defendant was competent to enter the plea of guilty is not clearly erroneous.

### C.

Among the subjects covered at the hearing on July 21, 1989, was the effect of defendant's segregation from other prisoners at the Missouri State Penitentiary. The following exchanges occurred:

THE COURT: Has anybody threatened you in any way? Anybody over at that prison putting the squeeze on you to make you do this?

DEFENDANT HUNTER: I'm harassed constantly. To do this? No.

. . . .

MR. CATLETT: Now, the fact that you're in that situation, locked down in solitary confinement, being mistreated, in your mind, is that a factor you have considered in deciding to enter a plea of guilty?

DEFENDANT HUNTER: Well, the only factor that that is, is a factor that, you know, I don't want to be there any longer than I have to, O.K. But the situation as a coercement? No. I wanted to plead guilty before I was ever in 5–C.

These statements are ample evidence to refute the post-conviction claim that defendant's solitary confinement coerced the defendant's plea of guilty. Judge McHenry did not err in concluding that defendant's plea was not coerced by solitary confinement.

### D.

 Defendant also argues that he made an unknowing and unintelligent waiver of his right to have a jury assess his punishment when he entered the plea of guilty. The argument assumes such right exists. A defendant has no constitutional right to have a jury assess punishment. *Spaziano v. Florida,* 468 U.S. 447, 460, 104 S.Ct. 3154, 3162, 82 L.Ed.2d 340 (1984); *State v. Griffin,* 756 S.W.2d 475, 487 (Mo. banc 1988), *cert. denied,* 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). A jury trial on the issue of punishment in a first degree murder case is permitted by statute. However, when a defendant pleads guilty or is found guilty after a trial to the court, he is not permitted to have a jury trial on the issue of punishment, except by agreement of the State. § *565.006.2.*

 Here, before the plea of guilty was accepted, the defendant was informed of the aggravating circumstances asserted by the State, and that if he was found guilty of first degree murder, he would be entitled to present evidence of mitigating cir-

cumstances. He was also informed that if he pled not guilty and was found guilty by a jury, he would be entitled to have the jury assess his punishment, but by pleading guilty, the judge would assess punishment.

Notwithstanding all this, defendant makes a convoluted argument that he was ill-advised or unadvised by Judge Kinder and defense counsel regarding specific aggravating and mitigating circumstances that could be submitted to the jury. What the argument overlooks is the fact that defendant made a decision early on to enter a plea of guilty. There is no evidence in this record to indicate that anything Judge Kinder or defense counsel said regarding mitigating or aggravating circumstances would have changed defendant's position. Specifically, the record shows defendant was correctly informed that his drug addiction was not a defense but that it might be considered in mitigation. The defendant's voluntary plea of guilty was not the result of any misinformation or lack of information regarding aggravating or mitigating circumstances. Thus defendant's plea of guilty was not rendered unintelligent or unknowing on that account.

As an aside to this claim, defendant argues that "Claim J" of his motion for post-conviction relief was not addressed by the post-conviction court. Claim J contains a long list of items that the defendant claims the prosecutor failed to disclose in response to discovery. Defendant presented no evidence at his Rule 24.035 hearing in support of the factual claim that he was denied discovery. Rule 24.035(i) requires findings of fact and conclusions of law on all issues presented. But a well-recognized exception to the rule is that when there has been an evidentiary hearing at which no substantial evidence is presented in support of a factual claim, there is no error in failing to make a finding of fact or conclusions of law regarding a bare allegation in a post-conviction motion. *Burton v. State*, 817 S.W.2d 928, 930 (Mo.App.1991); *W.F.W. v. State*, 779 S.W.2d 724, 725 (Mo.App.1989);

*Gawne v. State*, 729 S.W.2d 497, 501 (Mo. App.1987). The plea of guilty was both intelligently and knowingly made.

### III. Factual Basis for the Guilty Plea

■ The State may, without offending the United States Constitution, allow a criminal defendant a choice of pleading guilty even though the defendant protests his innocence of the crime charged. *North Carolina v. Alford*, 400 U.S. 25, 38–39, 91 S.Ct. 160, 167–168, 27 L.Ed.2d 162 (1970). In Missouri, a judgment on a plea of guilty may not be entered unless the trial judge determines there is a factual basis for the plea of guilty. *Rule 24.02(e)*. If the plea of guilty is voluntarily and understandingly made and unequivocal as to the various factual elements necessary to constitute the offense, the plea itself forms a factual basis for the guilty plea. *Milligan v. State*, 772 S.W.2d 736, 738–39 (Mo.App. 1989). *See also Robinson v. State*, 491 S.W.2d 314, 315 (Mo.1973).

■ Defendant directs our attention to that portion of his guilty plea where he stated he assumed Mrs. Hodges died of a heart attack while he and Tomas Ervin were attempting to prevent her escape. He argues that because he only admitted that she died of a heart attack rather than from suffocation by plastic as alleged in the indictment, the trial court could not find a factual basis for the plea of guilty.

■ A defendant is legally accountable for a homicide if the direct and immediate cause of death resulted naturally and proximately from the defendant's unlawful act, even if the death is contributed to by other unforeseen causes. *State v. Williams*, 652 S.W.2d 102, 111–112 (Mo. banc 1983) (where the victim, in an effort to escape being shot or beaten to death, ran into a river and drowned, the evidence was sufficient to establish the cause of death being attributable to the defendant in a capital murder case); *State v. Bolder*, 635 S.W.2d 673, 680 (Mo. banc 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983

(1983) (evidence that defendant died of an infection resulting from a stab wound and not from the stabbing itself was sufficient to hold the defendant legally responsible for capital murder); *State v. Klaus,* 730 S.W.2d 571, 576 (Mo.App.1987) (evidence that death resulted from cardiac arrest seventeen days after the defendant intentionally struck the victim with her car, was held sufficient to support a second degree murder conviction); *State v. Allen,* 710 S.W.2d 912, 917 (Mo.App.1986) (evidence that the victim died of a heart attack two days after an assault supported a conviction of first degree murder); *State v. Vaughn,* 707 S.W.2d 422, 426 (Mo.App. 1986) (where facts show a fatal heart attack was brought on by an unlawful assault, there was a sufficient causal connection to support a second degree murder conviction).

Accepting defendant's statement at the plea of guilty proceeding as true, the decision to kill the Hodgeses was formed when the mask was removed from the accomplice and when defendant's name was called out. The assault on Mrs. Hodges to prevent her from escaping occurred after that decision was made. The intermediate purpose of preventing her escape was part of an overall effort to carry out a plan of killing the potential witnesses to the robbery. The facts, as admitted by the defendant, were sufficient to show all elements of the crime of first degree murder.

In addition, the prosecutor stated that he would produce evidence that Mrs. Hodges' body was discovered wrapped in plastic. A reasonable inference would be that if she was not dead before being wrapped in plastic, that act would cause death. Whether she died of suffocation or a heart attack brought on by the assault, her death was the natural and probable consequence of defendant's conduct.

■ In the same point relied on, defendant argues that Judge Kinder failed to comply with § 600.051.2, which requires that when a defendant waives counsel, the trial judge must inquire before sentencing to determine if the defendant is in fact guilty. The trial judge is also required to inquire of the prosecutor to determine if the prosecutor knows of facts that would cast a reasonable doubt as to defendant's guilt or available defenses not known to the defendant or the court. The statutory purpose is to ensure that before an uncounseled defendant is sentenced, an independent determination is made as to the fact of the defendant's guilt and the strengths and weaknesses of the State's case.

Here the defendant was fully represented by counsel when pretrial discovery was sought and obtained. Defendant had standby counsel at the plea of guilty. He was fully represented at all subsequent matters prior to and including sentencing. Insofar as determining the fact of defendant's guilt and discovery of the strengths and weaknesses in the State's case, defendant was fully represented.

■ As previously noted, when a defendant has standby counsel, he has not fully waived his right to counsel. *See State v. Burgin,* 539 S.W.2d 652, 653–54 (Mo.App. 1976). The purposes of § 600.051.2 were accomplished by his attorney. Thus, the requirements of § 600.051.2 are inapplicable.

### IV. Trial Judge Bias

■ Defendant claims that certain conduct by Judge Kinder indicated bias against defendant. He claims error in the failure of Judge Kinder to disqualify.

Among the complaints is that Judge Kinder encouraged defendant to fire his lawyer. The record reflects that the first expression of dissatisfaction with counsel came from defendant at the July 17 hearing, when defendant responded to a comment that defense counsel thought the case would be tried by saying, "Then I'll have to get another lawyer." A review of the entire record reflects that Judge Kinder counseled against defendant's failure to follow the attorney's advice and against self-representation.

Defendant also complains that Judge Kinder encouraged defendant to not be concerned about whether to plead guilty to first or second degree murder. During the course of the questioning, Judge Kinder made an offer to allow the defendant to plead guilty to second degree murder of Mrs. Hodges. Defendant replied, "It doesn't matter to me ... Really, I think it's kind of a moot question...." Judge Kinder replied, "I think it's a matter of statistics, but that's neither here nor there." The judge then explained that defendant's account of the murder of Mrs. Hodges created "a real jury question and a real—a matter that a finder of fact would have to determine as to whether or not you deliberately and knowingly killed that woman." In context, the comment was not designed and did not have the effect of encouraging defendant to plead guilty to first degree murder rather than second degree murder. The judge was attempting to inform defendant that a jury might find second degree murder based on defendant's version of the death of Mrs. Hodges.

The third area of alleged bias against defendant was Judge Kinder's comments regarding the Minnesota Multiphasic Personality Inventory. He referred to the test as one "going into 622 various questions about how I feel about myself and my bodily functions." Similarly, Judge Kinder made a comment that he "somewhat agreed" with some of defendant's observations regarding psychiatrists. When viewed in the context of the whole record, the statements do not establish that Judge Kinder had a disqualifying bias against the defendant.

Finally, defendant refers to comments by Judge Kinder that he "has no qualms" about the death penalty, and, "If I really wanted to be a cruel man, I'd probably sentence you to life without parole." Defendant argues that these declarations show an undue bias in favor of the death penalty. Again, in the context of the record, these were merely efforts on the part of the judge to advise the defendant that

by pleading guilty to first degree murder, the trial judge was free to consider either life imprisonment without parole or the death penalty. These comments do not demonstrate an undue bias.

■ A disqualifying bias and prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from his participation in the case. An impersonal prejudice resulting from background experience is insufficient to require disqualification. *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 697 (Mo. App.1990). Applying that standard here, none of the facts alleged indicate a personal bias against the defendant or in favor of the State on the issue of either guilt or punishment.

## V. Claims of Error in the Sentencing Phase

### A.

■ Judge Kinder ordered a presentence investigation report. Defendant argues that Judge McHenry erred in denying relief because Judge Kinder improperly relied on that report in the sentencing phase. Defendant argues that the presentence investigation report contained hearsay and violated defendant's rights to confrontation and proof beyond a reasonable doubt that the death penalty was appropriate. A claim of improper consideration of a presentence investigation report is a claim of trial error. As such, that claim may not be considered in a proceeding for post-conviction relief. *Wilkins v. State,* 802 S.W.2d at 502. The only basis for our consideration of this claim is that it amounts to plain error in the direct appeal. This Court has held that a trial judge's consideration of a presentence investigation report does not amount to manifest injustice. *State v. McMillin,* 783 S.W.2d 82, 96 (Mo. banc), *cert. denied,* — U.S. —, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990).

Notwithstanding that holding, defendant argues that the report contains improper

victim impact statements.[4] The statements found in the victim impact portion of the report are so innocuous that they are unlikely to inflame one of ordinary temperament. In addition, where a judge rather than a jury is the trier of fact, the dangers inherent in victim impact statements are minimized. *McMillin, supra.* The consideration of the presentence investigation report was not prejudicial.

### B.

 During the post-conviction deposition of Judge Kinder, defendant's counsel began to inquire regarding mitigation evidence. Judge Kinder interrupted and asked, "What mitigation? Tell me what mitigation was presented?" Defendant concludes from this single comment that Judge Kinder failed to consider the mitigating evidence. It is questionable whether the mental process of a judge in "considering"[5] evidence is subject to impeachment by way of a post-conviction deposition. However, that issue need not be decided because here the deposition does not reflect that Judge Kinder failed to consider mitigating evidence.

The defendant overlooks Judge Kinder's testimony at the same deposition, where the following exchanges occurred:

Q [by defendant's counsel]: So in this specific case the mitigation you would have considered is—?

A [Judge Kinder]: I'm not going to tell you what I would have considered. I would have heard whatever they put on under the statutory list of items of mitigation. That's what I'm there for. And if they are not there, Mr. Catlett couldn't invent them. I can't fill in the blanks.

Q: The question is what Mr. Catlett did present and what he didn't present.

And what was available to him and wasn't available to him is an issue that is not related to you, your Honor, or questions that you could answer.

A: That's right. And I'm not going to sit and speculate as to what if somebody had presented to me in mitigation, I would have considered it. I would have to consider what they presented in mitigation.

Q: In regard to what you would consider statutorily, would you weigh whatever is mitigated against the aggravating circumstances?

A: That is what a jury is required to do and that's what I am required to do.

The post-conviction court's conclusion that Judge Kinder considered the mitigation evidence presented is supported by substantial evidence and is not clearly erroneous.

### C.

 Just before Judge Kinder sentenced defendant, he commented regarding the evidence at the penalty phase hearing. In one of those comments, he stated that defense counsel's "first excuse" for the murders was defendant's drug abuse and that "the state just doesn't excuse one crime by another." From that, defendant argues that Judge Kinder held an erroneous notion that only if drug abuse is a legal excuse for murder, may it be considered as a mitigating circumstance. Thus defendant claims he was denied the benefit of mitigating circumstantial evidence, contrary to § 565.030.4. He also argues that Judge Kinder failed to use the statutory words "beyond a reasonable doubt" in his oral declaration that he found aggravating circumstances. These issues again were not raised before the trial court and were

---

**4.** Only two such statements are found in the report. A stepsister of Richard Hodges said, "She hopes justice is done." Richard's half-sister stated that although she did not know Richard, "this shouldn't happen to anyone … and that Hunter needs to have the death penalty."

**5.** As defendant uses the word "considering," he seems to mean "weighing" as opposed to "hearing" evidence.

not raised in a post-conviction motion. They are before us only for plain error review in the direct appeal.

■ The premise of defendant's argument is that § 565.030.4 requires specific oral or written findings by a trial judge regarding the evidentiary standard utilized in determining whether to assess the death penalty. The statute makes no such requirement. The argument also assumes that comments regarding drug abuse being "no excuse" is part of the judgment. Those comments are not part of that judgment.

■ The judgment and sentence is found in the trial court's "Warrant of Execution" sentencing defendant to death by lethal injection. Among other matters contained in that document is the following:

> The Court further finds beyond a reasonable doubt the existence of the following aggravating circumstances:
>
> The defendant has a prior conviction for murder, the murder of Richard and Mildred Hodges was committed while the defendant was engaged in the perpetration of the offense of robbery, and the murder of Richard Hodges was committed while the defendant was also engaged in the murder of Mildred Hodges. The Court further finds that the aforesaid aggravating circumstances outweigh the existence of any mitigating factors and that their existence warrants the imposition of death as punishment for the defendant.

Implicit in the judgment is that all essential intermediate factual and legal issues upon which the judgment rests have been resolved consistently with the judgment. The absence of an opinion or declaration of law is not error. *See State v. Johnson,* 457 S.W.2d 795, 796 (Mo.1970).

■ The trial judge's comments were merely reflections on how he weighed the evidence of defendant's drug abuse in determining mitigating circumstances. The weight of the evidence is not subject to review by an appellate court. *State v. Simmons,* 494 S.W.2d 302, 303 (Mo.1973). Here the trial judge heard defendant's statements of prior drug abuse as well as his statements that such abuse would continue if defendant had the opportunity to obtain drugs. On appeal the State's evidence is accepted as true together with all reasonable inferences drawn therefrom, and all evidence and inferences to the contrary are disregarded. *State v. Ludwig,* 609 S.W.2d 417, 417–18 (Mo.1980); *State v. Coffman,* 647 S.W.2d 849, 852 (Mo.App. 1983). So viewed, there is substantial evidence justifying a conclusion that drug abuse in this case was not a mitigating circumstance but was rather further evidence of defendant's antisocial and criminal behavior. This claim of error is without merit.

### D.

■ Defendant argues the sentencing judge erred in considering the aggravating factor of murder during a robbery where he was precluded from convicting defendant of felony murder. He relies on *State v. Purnell,* 126 N.J. 518, 601 A.2d 175, 177 (1992), which vacated a death sentence.

Defendant's reliance on *Purnell* is misplaced. In that case both the conviction and the sentence were imposed by a jury. In the guilt phase defendant was not permitted to submit a non-capital "felony murder" instruction. However, the State was permitted to use a robbery committed concurrently with the murder as an aggravating circumstance in the penalty phase instructions. Here, the defendant pled guilty before a judge and the sentencing phase was conducted before the judge. Thus, there was no inconsistency between the guilt and punishment phase and no denial of a "fair trial." The judge properly considered the aggravating circumstance of murder during a robbery in the sentencing phase.

### E.

■ Under § 565.035.3(2), this Court reviews whether the evidence supports the

judge's finding of statutory aggravating circumstances. Defendant claims that all of the aggravating circumstances are invalid and unsupported by the evidence. The trial court's warrant of execution makes reference to three statutory aggravating circumstances: defendant had a prior conviction of murder, the murders were committed while the defendant was engaged in the perpetration of the offense of robbery, and the murders were committed while the offender was engaged in another unlawful homicide. § *565.032.2(1), (2), (11)*. In the "Report of the Trial Judge," required by Rule 29.08(c), Judge Kinder made reference to the above three aggravating circumstances, and in addition put an "X" next to the aggravating circumstance that the murders were committed for the purpose of receiving money or any other thing of monetary value from the victim of the murder. *See § 565.032.2(4)*.

Defendant argues that the trial court's judgment was duplicative and arbitrary in considering the factor that the murders were committed for the purpose of receiving money, § 565.032.2(4), and the murder was committed in the perpetration of the felony of robbery, § 565.032.2(11). As previously noted, the judgment of the trial court is found in the Warrant of Execution. The judgment contains no finding that the murders were committed for the purpose of receiving money. The "Report of the Trial Judge" is inconsistent with the judgment of the trial court in making reference to the aggravating factor described in § 565.032.2(4). To the extent that the report is inconsistent with the judgment, the report is disregarded.

 Defendant also contends that the trial court could not consider the murder of Mildred Hodges as an aggravating factor in the murder of Richard Hodges in that Mildred Hodges merely died in the course of a robbery, not in the course of a homicide. Nevertheless, the evidence shows that when the robbery went awry, defendant and his accomplice decided to kill both of the Hodgeses, and they carried out this decision. The case is similar to *State v. Powell*, 798 S.W.2d 709, 715–16 (Mo. banc 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991), where two victims were robbed, subject to a continued assault, and then killed. Each murder was an aggravating circumstance of the other. Likewise, the evidence here supports that each murder was committed while the offender was engaged in the commission of another unlawful homicide.

 Finally, the judge found the aggravating circumstance that the murder was committed by a person with a prior record of murder. Among the aggravating circumstances that may be considered in a capital murder case is that "[t]he offense was committed by a person with a prior record of conviction for murder in the first degree, or the offense was committed by a person who has one or more serious assaultive criminal convictions." § *565.032.2(1)*.

Defendant argues that his prior conviction for felony murder is now the crime of second degree murder. *See § 565.021.1(2)*. The defendant's argument fails to acknowledge that § 565.032.2(1) contains two different types of prior convictions that may be considered an aggravating circumstance. The first is a conviction for murder in the first degree, and the second is a conviction for a serious assaultive crime. Defendant's prior conviction for felony murder qualifies as a serious assaultive crime. No error was committed in finding that conviction to be an aggravating circumstance.

### F.

 Under § 565.035.3(1), this Court considers whether the death sentence was imposed "under the influence of passion, prejudice or any other arbitrary factor." Defendant argues that all the preceding points combined show an arbitrary and prejudicial proceeding. As demonstrated by the analysis of the previous points, defendant's specific claims of prejudice and arbitrariness are without merit. Numer-

ous non-errors cannot add up to error. *State v. Leisure,* 772 S.W.2d 674, 683 (Mo. App.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990). A review of the claims and the record confirm that the sentences were not imposed under the influence of passion, prejudice, or any other arbitrary factor.

### VI. Proportionality of Sentence

■ Under § 565.035.3(3), this Court determines whether the sentence of death is excessive or disproportionate to the sentence imposed in similar cases, considering the crime, the strength of the evidence, and the defendant. Here, overwhelming evidence shows a planned killing during the course of a robbery. This case is similar to other cases in which the death sentence was affirmed. *See State v. Ervin,* 835 S.W.2d 905, 927 (Mo. banc 1992), citing five examples. In addition, defendant had a previous conviction for felony murder. A defendant previously convicted of murder is quite often given the death sentence. *See State v. Clemmons,* 753 S.W.2d 901, 914 (Mo. banc 1988), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988) (citing four examples). This sentence is not disproportionate to those in similar cases.

### VII. Claims of Ineffective Assistance of Counsel

#### A.

■ Defendant argues that counsel was ineffective in three respects. The first is that counsel failed to properly investigate and pursue a motion to suppress the defendant's confession. The argument here is that had counsel litigated the motion, the trial court would have suppressed the confession and the defendant, knowing the confession was inadmissible, would not have entered a plea of guilty.

Defendant's confession occurred in March of 1989. At a meeting prior to the confession, defendant told police officers, "Well, if the reward money is still being offered next time you come talk to me, bring an attorney; if not, there's no need to bring an attorney." At the next meeting, the officers informed defendant that the reward had been withdrawn. They also advised defendant of his *Miranda* rights. Defendant signed a form waiving those rights. He then gave a confession.

■ Under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), a defendant who has clearly asserted his right to counsel may not be subject to further police-initiated interrogation until counsel has been made available. However, an invocation of a right to counsel which is by its terms limited in some respect does not foreclose further police questioning so long as police honor the limitation. *Connecticut v. Barrett,* 479 U.S. 523, 529–30, 107 S.Ct. 828, 832–33, 93 L.Ed.2d 920 (1987). *See also State v. Reese,* 795 S.W.2d 69, 73 (Mo. banc 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991); *State v. Gill,* 806 S.W.2d 48, 51 (Mo.App.1991); *State v. Thomas,* 698 S.W.2d 942, 947 (Mo.App. 1985). Here the police scrupulously complied with the precondition that if the reward was withdrawn, further interrogation without counsel was permissible. An objection to the confession would have been meritless. The post-conviction court was not clearly erroneous in finding counsel was not ineffective for failing to investigate and file a meritless motion to suppress defendant's confession. *See State v. Jalo,* 796 S.W.2d 91, 98 (Mo.App.1990).

#### B.

As previously noted, the initial psychiatric evaluation was not completed because defendant failed to cooperate. The argument made now is that counsel was ineffective for failing to be more aggressive in seeking a second or more complete psychiatric evaluation. This argument assumes that defendant was incompetent at the time he pled guilty. As has been heretofore discussed, defendant failed to establish his

incompetence, within the meaning of chapter 552, to assist in his defense. Accordingly, defendant was not prejudiced by counsel's failure to pursue further psychiatric evaluation. The motion court was not clearly erroneous in this regard.

## C.

Defendant makes eight other claims of ineffective assistance of counsel. Five of these claims have to do with the plea of guilty. Three of them relate to defendant's representation at the sentencing phase of the trial. All eight take issue with the post-conviction court's findings of fact and conclusions of law.

 Judge McHenry correctly ruled that trial counsel was not ineffective in failing to object to defendant's waiver of counsel. As previously noted, counsel may not impose his' or her will upon a defendant regarding strategic decisions. Judge McHenry found no evidence of any conflict between defense counsel and defendant requiring counsel to withdraw. The court correctly concluded that there was only a disagreement as to whether the defendant should plead guilty. The motion court correctly found no evidence indicating that defendant would not have entered a plea of guilty had Judge Kinder been disqualified and thus defendant was not prejudiced by counsel's failure to seek a change of judge. The motion court correctly found that the questioning by defense counsel at the plea of guilty hearing did not prejudice defendant by supplying missing details of the crime or "inflaming" the trial judge because movant had already pled guilty and, in effect, had admitted the essential elements of those crimes. The motion court also found and the record shows that counsel had advised defendant at the plea of guilty hearing of his right to remain silent. No evidence in the record supports the claim that counsel failed to advise defendant of his right to remain silent during psychiatric interviews.

In three other claims, defendant asserts ineffective representation at the sentencing hearing. A review of those claims likewise indicates they are without merit. The motion court concluded that defendant was not prejudiced by the presentence investigation and thus counsel was not ineffective in failing to object to that report. Defendant also claims counsel was ineffective for failing to object to an argument by the State that while defendant was incarcerated for murder, he took "advantage of whatever educational opportunities are offered," but when released on parole, "he ended up committing another felony." In this regard the defendant has failed to demonstrate that an objection to such argument would have had merit. The third claim of ineffective assistance of counsel at the punishment phase hearing is that counsel failed to present mitigating evidence regarding defendant's drug abuse problem and the severe depression which follows withdrawal from cocaine. The record refutes that claim because evidence of drug abuse and depression resulting from withdrawal from drugs was presented to the trial court prior to sentencing. On these claims, Judge McHenry's findings of fact and conclusions of law are supported by the record and are not clearly erroneous.

## D.

 Defendant's final claim is that his rights to due process, equal protection, and access to the courts are violated by the failure of post-conviction counsel to present additional exculpatory evidence. There is no constitutional right to counsel in a post-conviction proceeding. *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). Consequently, there is no constitutional claim to ineffective assistance of post-conviction counsel. *Coleman,* at —, 111 S.Ct. at 2566. Claims of ineffective assistance of post-conviction counsel are categorically unreviewable. *State v. Ervin,* 835 S.W.2d 905 (Mo. banc 1992); *Pollard v. State,* 807 S.W.2d 498, 502 (Mo. banc), *cert. denied,* — U.S. —, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991). The burden of error by

post-conviction counsel falls on the shoulders of the defendant, not on the State.

The judgments of the trial court and the motion court are affirmed.

All concur.