**STATE of Missouri, Respondent,**

v.

**Gary Lee ROLL, Appellant.**

No. 76570.

Supreme Court of Missouri,
En Banc.

March 25, 1997.

Rehearing Denied April 29, 1997.

Martin D. Warhurst, Kansas City, Loyce Hamilton, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Stacy L. Anderson, Assistant Attorney General, Jefferson City, for respondent.

BENTON, Judge.

Gary Lee Roll pled guilty to three counts of murder in the first degree, in addition to three counts of armed criminal action and one count of robbery. The circuit court sentenced him to death for each murder, and to terms of imprisonment for the other crimes. After an evidentiary hearing, the post-conviction court overruled his Rule 24.035 motion. This Court has exclusive appellate jurisdiction. *Mo. Const. art. V, § 3.* Affirmed.

## I.

After ingesting alcohol, marijuana, and four to six hits of LSD, Gary Lee Roll, David Rhodes, and John Browne decided to rob a drug dealer. Roll supplied each of them with a gun and a knife and drove the three to the home of an alleged drug dealer. When Roll attempted to force open the front door, a child inside cried out. Rhodes and Browne refused to go inside, so they all returned to Roll's residence.

Later that night, they decided to rob a different drug dealer, Randy Scheper. At about 4:00 a.m., Roll drove to Scheper's house, with Rhodes and Browne. Roll knocked on the door and Scheper's mother, Sherry, answered. Displaying a badge, Roll identified himself as a police officer and ordered her to open the door. When she did, Roll and Rhodes entered. Browne, who knew the family, remained outside, fearing he would be recognized. Inside the house, Roll fatally shot Randy in the head and beat Sherry to death with his gun. Roll (either alone or in concert with Rhodes) fatally stabbed Randy's brother, Curtis. Roll, Rhodes, and Browne then left with some marijuana and $215 in cash.

Returning home, Roll cleaned blood and hair from his gun and blood off his knife and clothing. He wrapped the murder weapons and a box of ammunition in a package, which his son buried in the woods behind Roll's house.

In the weeks after the murders, Browne began to fear for his safety. To protect himself, Browne wore a tape recorder during a conversation with Roll about the murders. On the tape, Roll admitted committing the murders and getting rid of the murder weapons. Roll also said that he killed the Schepers because "they knew everybody.... And I figured then they even knew me, because of something that was said in there...." Browne gave the tape to a friend for safekeeping, who in turn gave it to the police.

## II. Penalty Phase

### A. Aggravating and Mitigating Circumstances

Roll contends that the trial court either refused to consider his intoxication on the night of the murders, or considered it as an aggravating factor instead of a mitigating factor. Since there was no objection, review is discretionary for plain error. *Rule 30.20.* To merit relief, Roll "bears the burden of demonstrating that the action of the trial court was not only erroneous, but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left

uncorrected." *State v. Wise,* 879 S.W.2d 494, 520 (Mo. banc 1994), *cert. denied,* 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995).

■ Roll argues that the judge did not properly consider Roll's drug use:

> THE COURT: .... I have considered the aggravating circumstances, I've considered the mitigating circumstances, I've considered all of the evidence which was presented at the hearing on Friday a week ago. I think in part there is an attempt to excuse whatever occurred as a result of the use of drugs, the use of lysergic acid, but on the other hand the Court and the law cannot countenance the commission of one offense as an excuse for the commission of another offense. And I cannot myself in this case do that....

Drug abuse may or may not be considered a mitigating circumstance, depending on the facts of the case. *State v. Hunter,* 840 S.W.2d 850, 868 (Mo. banc 1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993). Here, the trial judge's comments were "merely reflections on how he weighed the evidence of defendant's drug abuse in determining mitigating circumstances." *See id.*

Substantial evidence existed that Roll's drug use was not a mitigating factor. When first attempting to plead guilty, Roll did allude to drug use at the time of the crimes and "the condition I was in." However, at the second (successful) guilty plea hearing, and in his penalty phase testimony, Roll recounted his actions on the night of the murders, with almost no mention of drug use. All of the penalty phase evidence was considered by the judge, but the evidence of drug use was assigned little, if any, weight. The trial court committed no plain error.

### B. Failure to Follow § 565.030.4 [1]

■ Roll asserts that the trial court failed to follow the governing statute and thus violated his rights under the Eighth and Fourteenth Amendments (and the parallel provisions of the Missouri constitution). Specifically, Roll argues that the judge omitted the statutory words "beyond a rea-

sonable doubt" in his oral finding of aggravating circumstances under § 565.030.4. Because Roll raises this for the first time on appeal, this Court reviews for plain error. *Rule 30.20.*

■ Section 565.030.4 does not require specific oral or written findings by a judge sitting alone. *Hunter,* 840 S.W.2d at 868. This Court presumes that the trial judge knew and followed the law in sentencing Roll. *See State v. Feltrop,* 803 S.W.2d 1, 16 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Roll presents no facts to rebut this presumption. The judge expressly recited the three aggravating circumstances. Sufficient evidence existed to prove all three statutory aggravating factors beyond a reasonable doubt. Roll pled guilty to multiple homicides. *§ 565.032.2(2).* He pled guilty to robbery in connection with the murders. *§ 565.032.2(11).* He admitted on the tape recording that he murdered to conceal his crimes. *§ 565.032.2(15).* The trial court did not commit plain error.

### III. Post–Conviction Relief

### A. Rule 24.035 Time Limits

Roll asserts that the time limits in Rule 24.035 deprived him of due process, reasonable access to the courts, equal protection and effective assistance of counsel, and created the risk of arbitrary and capricious imposition of the death penalty. This Court has repeatedly rejected these attacks on the time limits in Rule 24.035 (conviction after guilty plea) and Rule 29.15 (conviction after trial). *See State v. Parker,* 886 S.W.2d 908, 929 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc), *cert. denied,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

### B. Assistance of Counsel—Guilty Pleas

■ Roll claims that the motion court erred in denying post-conviction relief for ineffective assistance of counsel. To prevail, the defendant must show that counsel's performance was not that of a reasonably com-

---

1. All statutory references are to RSMo 1994.

petent attorney, and that the defendant was thereby prejudiced. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In order to show prejudice in a guilty plea case, a defendant must prove that, but for the errors of counsel, he would not have pled guilty and would have demanded trial. *Id.* If conviction results from a guilty plea, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made. *Hagan v. State*, 836 S.W.2d 459, 463 (Mo. banc 1992).

 The motion court found that counsel was not ineffective, so review is limited to whether that court clearly erred. *Rule 24.035(k); State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Id.*

### 1.

Roll contends that his guilty plea was involuntary due to pressure and promises of his counsel, which deprived him of due process and effective assistance of counsel, and constituted cruel and unusual punishment.

 A guilty plea not only admits guilt but also consents to judgment of conviction without a jury trial. *Hunter,* 840 S.W.2d at 861. Accordingly, a guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Id.,* citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

On the morning of the first day of trial, Roll attempted to plead guilty. Because he could not recall many aspects of the crimes, the judge refused to accept the pleas. Later that evening after trial had adjourned for the day, Roll again requested to plead guilty. After further inquiry, the court accepted the pleas.

 Roll contends that his counsel pressured him by promising him that if he pled guilty, he would not get the death penalty. Moreover, Roll asserts that before his second attempt to plead guilty, counsel "coached" him on acceptable answers to the judge's questions.

The record at the second guilty plea hearing indicates otherwise:

> THE COURT: And finally in connection with this matter, do you understand that the ranges of punishment of the three offenses of murder in the first degree are that punishment is either life without probation or parole or the death penalty on each one of those three charges . . .?
>
> ROLL: Yes, your honor.
>
> \* \* \* \* \* \*
>
> THE COURT: Now I need to be absolutely sure of this fact. Have you in any way been led to believe that this Court would be more lenient on you if you entered a plea of guilty?
>
> ROLL: No, I have not.
>
> THE COURT: Have you in any way been promised any particular result in this case?
>
> ROLL: No, I have not.
>
> THE COURT: You understand that the full range of punishments is available to the Court and that the Court on the basis of the pre-sentence investigation, the sentencing hearing and what other factor, whatever other factors that the Court might consider would have to reach a decision in this case if I elected to accept your plea of guilty?
>
> ROLL: Yes, Your Honor.
>
> THE COURT: Do you understand that?
>
> ROLL: Yes, I do.
>
> THE COURT: Do you in any way hold or harbor any kind of feeling that you're entering a plea of guilty will in some way ensure you that possibly the ultimate punishment would not be imposed? Do you in any way believe that?
>
> ROLL: No, your honor.
>
> \* \* \* \* \* \*
>
> THE COURT: Is that a fair statement of what he's also told you? Now, I don't want a defendant to leave this courtroom

and then later come back into the courtroom and say, "The only reason I pled guilty was because my attorney threatened me, pressured me or coerced me into this plea." Has Mr. McManaman or his assistant over there in any way pressured you into making, entering these pleas of guilty?

ROLL: No, your honor.

THE COURT: Have they in any way threatened you or coerced you into entering these pleas of guilty?

ROLL: No, your honor.

The trial court found that the "pleas are freely and voluntarily entered with understanding of nature of charges, ranges of punishment and consequences thereof. Court further finds that factual basis exists for said pleas and that same are not the product of fear, threats, or coercion." In addition, Roll later stated that he had no complaints about the way counsel had represented him. *See Rule 29.07(b)(4).*

█ At the evidentiary hearing, Roll's trial counsel testified that after Roll expressed his desire to plead guilty, they discussed its pros and cons. After this discussion, Roll decided to plead guilty. Critically, Roll did not testify at the evidentiary hearing that he was pressured or coerced in any way. Roll did maintain that counsel promised him he would not receive the death penalty; counsel denied making such a promise. "While an individual may proclaim he had a certain belief and may subjectively believe it, if it was unreasonable for him to entertain such a belief at the time of the plea proceeding, relief should not be granted." *McMahon v. State,* 569 S.W.2d 753, 758 (Mo. banc 1978). Because the guilty plea record is clear and because the motion court found trial counsel believable and Roll unbelievable, the motion court's determination was not clearly erroneous.

█ In the alternative, Roll asserts that his guilty pleas were not knowing, voluntary and intelligent because counsel was ineffective in failing to advise him "one way or the other" whether he should plead guilty. Roll did not raise this claim in his *pro se* or amended motions for post-conviction relief. "Claims of ineffective assistance of counsel raised for the first time on appeal following a post-conviction relief hearing are procedurally barred." *State v. Gray,* 887 S.W.2d 369, 386 (Mo. banc 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995).

### 2.

Roll claims that his counsel did not adequately investigate and thus failed to: (i) raise a defense of diminished capacity based on mental disease or defect; (ii) present expert testimony during the penalty phase regarding Roll's twenty-year treatment for chronic pain and the effects of LSD; and (iii) apply for funds for expert witnesses. Roll asserts prejudice because if counsel had properly investigated and advised him, he would not have pled guilty.

█ "The terms 'mental disease or defect' do not include alcoholism without psychosis or drug abuse without psychosis...." § 552.010. For counsel to be ineffective in failing to investigate a mental disease or defect defense, Roll must show facts indicating a questionable mental condition. *State v. Richardson,* 923 S.W.2d 301, 328 (Mo. banc), *cert. denied,* — U.S. ——, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996). "Absent some suggestion of mental instability, counsel has no duty to initiate an investigation of the accused's mental condition." *Id.* The need for an investigation is not indicated where a defendant has the present ability to consult rationally with counsel and to understand the proceedings. *Id.*

█ A neuropharmacologist testified at the evidentiary hearing that Roll was psychotic on the night of the murders based upon the ingestion of LSD (though he first examined Roll nearly two years after the murders). A neuropsycologist also testified that Roll was not then in control of himself or able to make any kind of decision in a normal fashion (though he, too, first examined Roll nearly two years after the murders).

Roll's counsel testified at the evidentiary hearing that he did consider a mental disease or defect defense, but rejected it for several reasons. First, during initial interviews, Roll said he knew nothing about the murders.

After counsel confronted him with police reports of his involvement, Roll indicated that he had only waited outside while Rhodes and Browne committed the murders. Since Roll denied committing the murders, counsel had no reason to pursue a mental disease or defect defense, because it was inconsistent with the theory that the other defendants—not Roll—committed the murders.

Second, counsel testified at the evidentiary hearing that he spoke with Dr. Agnew, a psychologist who—for three years before the murders—treated Roll for chronic pain and depression. Dr. Agnew testified at the evidentiary hearing that every time he saw Roll—including five days before the murders—he was sane and never revealed any signs of psychosis from drugs or mental disease. Dr. Agnew further testified that he told Roll's counsel that "we had no history of Gary Roll ever experiencing any psychotic symptoms," and that Roll "was competent every time I saw him."

Third, counsel testified at the evidentiary hearing that on the eve of trial, Roll told him that he had committed the murders and wanted to plead guilty. Based on these conversations, counsel believed that Roll understood the events on the night of the crimes, the charges against him, and the penalty he faced.

These facts do not suggest mental instability that requires further investigation or a mental evaluation. The motion court did not clearly err in finding that Roll failed to show that counsel did not adequately investigate mental disease or defect issues.

### 3.

Roll alleges that his attorney had a conflict of interest that violated his Sixth, Eighth, and Fourteenth Amendment rights (and the companion clauses of the Missouri constitution). Specifically, Roll claims that counsel used Roll's assets to pay counsel's fee, instead of securing a mental health expert. To prevail, a defendant must demonstrate that an actual conflict of interest adversely affected counsel's performance. *Wise,* 879 S.W.2d at 515, citing *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980).

Conflict of interest normally arises where one attorney represents multiple defendants with divergent interests. *Parker,* 886 S.W.2d at 929. Here, counsel represented only Roll. Even assuming that the doctrine applies to individual representation, Roll has not shown clear error. As discussed above, there is substantial evidence that counsel investigated a mental disease or defect defense but rejected it for legitimate reasons.

Roll interprets a letter he received from counsel (before his withdrawal) as attempting to conceal a conflict of interest, by these words:

> The Public Defender hired and paid by the State of Missouri (the same entity that prosecuted you) seems *awfully anxious* to get involved in your case, which doesn't make a lot of sense to me. I cannot understand what their true motivation is here, Gary; there may be nothing to it, Gary, but I am suspicious of it.
>
> Gary, I hope you know what you are doing but I have my doubts about it all, especially the way the P.D. wants to get their hands on you.

(emphasis in original). This language infers—inaccurately—that the Public Defender and the Prosecutor have similar interests against Roll. It also inappropriately questions the motives of the Public Defender. Roll, however, fails to show an adverse effect because the Public Defender timely represented him post-conviction.

The motion court did not clearly err; counsel decided not to hire a mental health expert for reasons other than a lack of funds.

### C. Assistance of Counsel— Penalty Phase

To prove ineffective assistance in the penalty phase, Roll must show that his attorney's performance was not objectively reasonable and that he was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Wise,* 879 S.W.2d at 524. To prove prejudice, Roll must show a "reasonable probability that, but for counsel's errors, the result of

the proceeding would have been different." *Parker*, 886 S.W.2d at 929. The motion court found no ineffective assistance, so this Court reverses if it has a definite and firm impression that a mistake was made.

## 1.

■ Roll contends that his counsel was ineffective for failing to object to the State's argument about when and how he discussed the murders.

■ In closing argument during the penalty phase, Roll's counsel stated, "I believe my client is the only person who has come before a court of justice and honestly stated what happened on that occasion. The other two persons that you heard today as they quote unquote pled guilty, all place the blame elsewhere. Mr. Roll is the only person who came before this Court and who said he had to ante up for his responsibility." In rebuttal, the prosecutor stated,

> When he [Roll] says that he is the only one of the three who has told the Court the truth, Your Honor, he would leave [sic] the court to believe that he had decided he was going to tell what had happened as soon as it came to light, but in fact he didn't tell what happened. He didn't tell at the time he was arrested,[2] he didn't tell the first time he tried to plead guilty, and he still hasn't told to date, Your Honor. The time he was telling the truth was when he was being tape-recorded and didn't know he was being tape-recorded and that's when he was talking about killing them and said, "I couldn't do much else, you know, because they knew everybody, I figured they even knew me because of something that was said in there. We already had, we knew what we had to do something like that." And he was telling the truth when he said, "It don't bother me," not when he was today for the first time showing remorse.

A prosecutor has considerable leeway to make retaliatory arguments in closing. *Parker*, 886 S.W.2d at 922. A defendant may not provoke a reply and then assert error. *Id.*

Roll raised his willingness to come forward and tell what happened in his counsel's argument. The prosecutor's answer was therefore retaliatory. The motion court did not clearly err in finding that counsel was not ineffective for failing to object.

## 2.

Roll argues that his counsel was ineffective for failing to object to the victim impact evidence when four members of the victims' family requested that Roll be sentenced to death.

■ Victim impact evidence violates the Constitution only if it is so "unduly prejudicial that it renders the trial fundamentally unfair." *State v. Kreutzer*, 928 S.W.2d 854, 878 (Mo. banc 1996), citing *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991). In *Payne*, the United States Supreme Court was not confronted with family members' opinions about the appropriate sentence. *Payne*, 501 U.S. at 830 n. 2, 833 (O'Connor, J., concurring), and 835 n. 1, 111 S.Ct. at 2611 n. 2, 2612–13, 2614 n. 1 (Souter, J., concurring). The state here concedes that such opinions—by both sides below—are inadmissible under *Payne*, § 565.030.4, and § 595.209.1(4). Even if the family's requests for the death penalty were error, Roll has failed to show prejudice that constitutes fundamental unfairness. A judge determined Roll's sentence. This Court presumes that inadmissible evidence is not prejudicial because judges are presumed not to consider improper evidence when sentencing a defendant. *Richardson*, 923 S.W.2d at 319. No clear error has been shown.

## IV. Constitutional and Proportionality Issues

### A. Constitutionality of Death Penalty

Roll argues that the Missouri death penalty scheme is unconstitutional because of inadequate proportionality review, unrestricted prosecutorial discretion, no legitimate state interest, and failure to narrow the class of persons eligible for the death penalty.

---

**2.** When arrested, Roll waived his right to remain silent and spoke with police for about 20 minutes, essentially claiming to know only what he heard on the news about the murders. *See Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980).

These arguments have been consistently rejected. *Parker*, 886 S.W.2d at 933; *Wise*, 879 S.W.2d at 524; *Richardson*, 923 S.W.2d at 329. Roll offers no reason to reconsider. His claims are denied.

### B. Constitutionality of Rule 29.07

Roll asserts that proceedings under Rule 29.07(b)(4) violate the Fifth, Sixth, and Fourteenth Amendments (and similar sections of the Missouri constitution) unless he had independent counsel during that stage of the trial. This Court again rejects this argument. *State v. Debler*, 856 S.W.2d 641, 652–53 (Mo. banc 1993); *State v. Ervin*, 835 S.W.2d 905, 931 (Mo. banc 1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

### C. Proportionality Review

This court must determine (1) whether the judge imposed death "under the influence of passion, prejudice or any other arbitrary factor," (2) whether the judge's finding of statutory aggravating circumstances is supported by the evidence, and (3) whether the sentence is excessive or disproportionate to similar cases. § 565.035.3.

There is no evidence that Roll's sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. As determined above, sufficient evidence supported the aggravating circumstances under §§ 565.032.2(2) (the murders were committed while Roll was engaged in the commission of another unlawful homicide); 565.032.2(11) (the murders were committed while Roll was engaged in the perpetration of a robbery); and 565.032.2(15) (the murders were committed for the purpose of concealing or attempting to conceal a felony).

■ This Court has compared Missouri cases where the death penalty was imposed on defendants who committed multiple homicides. *State v. Richardson*, 923 S.W.2d 301; *State v. Gray*, 887 S.W.2d 369; *State v. Ramsey*, 864 S.W.2d 320 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *State v. Mease*, 842 S.W.2d 98 (Mo. banc 1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993); *State v. Hunter*, 840 S.W.2d 850; *State v. Ervin*, 835 S.W.2d 905; *State v.*

*Powell*, 798 S.W.2d 709 (Mo. banc 1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *State v. Reese*, 795 S.W.2d 69 (Mo. banc 1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991). This Court has also compared cases where the defendant committed murder in the course of a robbery. *Ramsey*, 864 S.W.2d 320; *Hunter*, 840 S.W.2d 850; *Ervin*, 835 S.W.2d 905; *State v. Kilgore*, 771 S.W.2d 57 (Mo. banc), *cert. denied*, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989); *State v. Griffin*, 756 S.W.2d 475 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); *State v. Murray*, 744 S.W.2d 762 (Mo. banc), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Finally, this Court has compared cases involving murder to conceal or attempt to conceal a crime. *State v. Grubbs*, 724 S.W.2d 494 (Mo. banc), *cert. denied*, 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987). Roll's punishment is not excessive or disproportionate compared with these similar cases.

■ Co-actors Rhodes and Browne both testified against Roll in the penalty phase. Rhodes pled guilty to three counts of murder in the second degree and received three consecutive life sentences. Browne pled guilty to one count of murder in the second degree and received a life sentence. Plea agreements and sentences received by co-actors "are not to be considered in proportionality review." *State v. Gilmore*, 681 S.W.2d 934, 946 (Mo. banc 1984). *See also State v. Leisure*, 749 S.W.2d 366, 383 (Mo. banc 1988). At any rate, Roll was not "a weakling and a follower" in committing the three murders, but rather was the leader and most culpable. *Cf. State v. McIlvoy*, 629 S.W.2d 333, 342 (Mo. banc 1982).

### V.

The judgments are affirmed.

HOLSTEIN, C.J., and PRICE, ROBERTSON, COVINGTON, WHITE, JJ., and CRANE, Sp.J., concur.

LIMBAUGH, J., not sitting.