# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3465

_____

Gary Lee Roll,                                    *
                                                  *
          Appellant,          *      Appeal from the United States
                                                  *      District Court for the Western
    v.                                  *      District of Missouri.
                                                  *
Michael Bowersox,                                 *
                                                  *
          Appellee.           *

_____

Submitted: April 19, 1999
Filed: May 24, 1999

_____

Before BOWMAN,[*] Chief Judge, FAGG, Circuit Judge, and BOGUE,[**] District Judge.

_____

FAGG, Circuit Judge.

Gary Lee Roll, a Missouri death row prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition. We affirm.

---

[*]The Honorable Pasco M. Bowman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999. He has been succeeded by the Honorable Roger L. Wollman.

[**]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

After taking drugs and drinking alcohol, Roll and two other men, David Rhodes and John Browne, went to the home of a Missouri drug dealer, Randy Scheper, to rob him. When Randy's mother answered the door, Roll flashed a badge, stated he was a police officer, and demanded entry. Once inside, Roll fatally shot Randy in the head and beat Randy's mother to death with his gun. Either alone or with one of his cohorts, Roll also fatally stabbed Randy's brother. Roll and his associates left with about $215 in cash and some marijuana. Roll then went home and cleaned the blood off his gun, knife, and clothing. He wrapped the murder weapons in a package and his son buried the package in the woods behind Roll's home. In the following weeks, Browne began to fear for his safety and, in an effort to protect himself, used a tape recorder while talking with Roll about the murders. During a taped conversation, Roll admitted he killed the Schepers, laughed about it, and specifically said he decided to kill them once he realized they recognized him. Roll also complained that he and his pals had just missed getting a lot more money by not committing the murders a day sooner, said no one would suspect him because of his broken leg, and acknowledged he disposed of the murder weapons right after the murders to hide his involvement. Browne gave the tape to a friend for safekeeping, and his friend turned the tape over to police.

With his taped confession in the hands of the authorities, Roll was arrested and tried in Missouri state court on three counts of first-degree murder. On the morning of the trial, Roll attempted to plead guilty, but the court rejected the plea after Roll testified he was using lysergic acid (LSD) and prescription drugs at the time of the murder and could not remember firing the gun. Following the first day of trial, Roll again sought to plead guilty. The court revisited the drug issue and accepted Roll's guilty plea after Roll said that there was no doubt in his mind that he shot Randy and hit Randy's mother in the head with a pistol and that he had testified falsely at the first plea hearing when he said he could not recall certain events about the offense.

At a sentencing hearing, the court heard evidence about Roll's mental state from lay witnesses and through presentation of Roll's medical records. Stating it had

reviewed the evidence presented at the trial before the guilty plea and the hearings, the court concluded there were both aggravating and mitigating circumstances. As aggravating factors, the court found each murder was committed while Roll was engaged in another homicide, Roll committed the murders during a robbery, and the murders were committed to conceal a felony drug offense by eliminating witnesses to the drug theft. As a mitigating factor, the court found Roll had no prior record. The court then said:

> I have considered the aggravating circumstances, I've considered the mitigating circumstances, I've considered all of the evidence which was presented at the hearing . . . . I think in part there is an attempt to excuse whatever occurred as a result of the use of drugs, the use of lysergic acid, but on the other hand the [c]ourt and the law cannot countenance the commission of one offense as an excuse for the commission of another offense, and I cannot myself in this case do that.

Before imposing a death sentence, the court granted Roll allocution, asking, "[I]s there any legal reason why I should not at this time pronounce judgment and sentence?" Roll made no objections.

In state postconviction proceedings, Roll argued his trial attorney was ineffective at sentencing in failing to establish Roll's mental condition at the time of the murders. In support of his argument, Roll presented three experts at an evidentiary hearing. A psychologist who had treated Roll for three years before the murders for chronic pain and depression testified Roll had no history of any psychotic symptoms and every time he saw Roll, including five days before the murders and fifty-four days after them, Roll was sane and never revealed any signs of psychosis from drugs or mental disease. A clinical psychologist who evaluated Roll two years after the murders testified Roll suffers from neurological impairments, including organic brain dysfunction, and Roll was not in control of himself at the time of his crimes. A pharmacologist who examined Roll around the same time also testified about Roll's prescription drug history and the effects and behaviors caused by LSD, including that Roll's LSD use

made him psychotic on the night of the murders. The postconviction court, which had also presided over Roll's trial, plea, and sentencing, rejected the hindsight opinion testimony favorable to Roll as unpersuasive. The court was not swayed given the contrary testimony of Roll's treating physician and Roll's statements during the plea hearing and on Browne's tape recording, which caught Roll "talking cold-bloodedly about the murders" and showed Roll made a calculated decision to kill his victims. The court denied postconviction relief.

In a consolidated appeal, the Missouri Supreme Court affirmed Roll's conviction and sentence as well as the trial court's denial of postconviction relief. See State v. Roll, 942 S.W.2d 370 (Mo.), cert. denied, 118 S. Ct. 378 (1997). Roll argued the judge's comments at sentencing showed the judge improperly refused to consider mitigating evidence of Roll's drug use at the time of the murders. Because Roll had not objected at sentencing, the court reviewed the argument only for plain error and found there was none. See id. at 373-74. The court observed that under Missouri law, drug abuse may or may not be considered a mitigating circumstance, depending on the facts, and in Roll's case, the trial judge's comments were "'merely reflections on how he weighed the evidence of [Roll's] drug abuse in determining mitigating circumstances.'" Id. at 374 (quoting State v. Hunter, 840 S.W.2d 850, 868 (Mo. 1992)). The court noted there was substantial evidence that Roll's drug use was not a mitigating factor. Although Roll had referred to his drug use during his first, unsuccessful attempt to plead guilty, Roll made almost no mention of drug use in recounting his actions on the night of the murders during the second, successful guilty plea hearing and during his testimony at the sentencing hearing. See id. As for the ineffective assistance claim, the court reviewed the expert testimony and concluded the facts did not suggest mental instability that required further investigation or a mental evaluation, so Roll failed to show counsel did not adequately investigate mental disease or defect issues. See id. at 377-78.

Having obtained no relief in the state court system, Roll filed a habeas petition in federal district court. Again, Roll asserted the sentencing court violated his Eighth and Fourteenth Amendment rights by failing to consider his drug use as potentially mitigating evidence at sentencing. See Eddings v. Oklahoma, 455 U.S. 104, 114-15 (1982). Roll also argued his trial counsel was ineffective at sentencing in failing adequately to establish Roll's mental condition at the time of the offense. The district court denied relief and granted Roll permission to raise those two issues on appeal. See 28 U.S.C. § 2253 (Supp. II 1996) (certificate of appealability). We turn to them now.

With respect to his claim that the sentencing court failed to consider mitigating evidence, Roll argues only that the district court applied the wrong standard of review. The district court reviewed the claim for plain error because the Missouri Supreme Court had reviewed the claim for plain error. Roll contends the Missouri Supreme Court should not have limited review to plain error because he did not need to object at sentencing to preserve the issue for appeal. We disagree. When a defendant fails to object to sentencing infirmities during allocution, Missouri courts consistently hold sentencing issues are procedurally barred and thus are reviewed only for plain error. See State v. Olney, 954 S.W.2d 698, 700 (Mo. Ct. App. 1997); State v. Hunter, 840 S.W.2d 850, 867-68 (Mo. 1992); see also Williams v. Lockhart, 873 F.2d 1129, 1131-32 (8th Cir. 1989). Roll also contends the state court's plain error review avoids procedural bar and permits full-blown federal habeas review on the merits. When a state court reviews a petitioner's claim under a plain-error standard, in federal habeas proceedings we either review the claim for plain error or view the claim as procedurally barred and decline to consider it at all absent a showing of cause and prejudice. See Hunter v. Bowersox, No. 97-2084, 1999 WL 173605, at *7 (8th Cir. Mar. 22, 1999); Sweet v. Delo, 125 F.3d 1144, 1152 (8th Cir. 1997), cert. denied, 118 S. Ct. 1197 (1998); Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996). Thus, the district court did not misstep in reviewing Roll's claim for plain error.

We agree with the district court that there was no plain error. Like the district court, we are convinced Roll's sentence would be the same if we remanded for reconsideration in light of his drug use at the time of the murders. The sentencing court heard evidence of Roll's drug use before it sentenced Roll to death, and the court later discounted as unpersuasive additional evidence about the effects of Roll's drug use offered at the postconviction stage. We thus see no manifest injustice. See Roberts v. Bowersox, 137 F.3d 1062, 1064 (8th Cir. 1998), cert. denied, 119 S. Ct. 808 (1999). For the same reason, even if we considered Roll's claim on the merits, as he wants, he would not prevail because the alleged error did not harm him. See Hitchcock v. Dugger, 481 U.S. 393, 399 (1987) (Eddings violation may be harmless error); Sweet, 125 F.3d at 1158 (same).

Indeed, we believe there was no error at all--the sentencing court did not "refuse to consider, as a matter of law, any relevant mitigating evidence." Eddings, 455 U.S. at 114 (italics omitted). Although the sentencer cannot exclude relevant mitigating evidence from consideration, the sentencer may decide what weight the evidence warrants. See id. at 114-15. Like the Missouri Supreme Court, we conclude "the trial judge's comments were 'merely reflections on how he weighed the evidence of [Roll's] drug abuse in determining mitigating circumstances.'" Roll, 942 S.W.2d at 374. Roll's sentencing judge did not think he lacked discretion to mitigate for Roll's drug abuse, but rather disbelieved the evidence that drug abuse impaired Roll's ability to act rationally and thus minimized his moral culpability. The judge heard the tape recording before sentencing Roll, and the judge's comments about the tape show the judge thought that at the time of the crime, Roll was in command of himself rather than in a drug-induced fog. Substantial evidence introduced before sentencing showed Roll's planning, premeditation, calculated decision to kill, and consciousness of guilt. Because the judge believed the drug intoxication evidence was unpersuasive in light of other forceful evidence, it is clear the judge simply gave the drug intoxication evidence very little weight after finding "it wanting as a matter of fact." Eddings, 455 U.S. at 113.

As for his ineffective assistance claim, Roll asserts the district court erroneously concluded he was not prejudiced by trial counsel's failure to investigate and establish at sentencing Roll's mental condition at the time of the crime.  We disagree.  Roll failed to show the allegedly deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  As we have already explained, the sentencing court heard all the postconviction testimony and disbelieved the testimony favorable to Roll because the testimony contradicted other compelling evidence, including Roll's tape-recorded statements.  Roll's taped confession shows his memory of the murders, as well as motive, deliberation, calculation, and consciousness of guilt at the time of the crime.  Because the evidence that could have been presented at trial or at sentencing was later presented in postconviction proceedings and was vigorously rejected by the sentencing court, presentation of the postconviction evidence earlier at trial or sentencing would not have had a likely effect on Roll's sentence.  See Guinan v. Armontrout, 909 F.2d 1224, 1229-30 (8th Cir. 1990).  As the district court observed, Roll's rational, calculated behavior at the time of his crime distinguishes his case from others in which presentation of mitigating mental capacity evidence might have changed the sentencing result.  See, e.g., Kenley v. Armontrout, 937 F.2d 1298 (8th Cir. 1991).  Because Roll has not shown prejudice, his ineffective assistance claim fails.  We also observe that, unlike the district court, we agree with the Missouri Supreme Court that Roll's attorney adequately investigated mental disease or defect issues, and thus his performance was not deficient.  See Roll, 942 S.W.2d at 377.

Having carefully considered all of Roll's arguments, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-