

# In the Missouri Court of Appeals
## Eastern District

### DIVISION III

| | | |
|---|---|---|
| JEFFREY G. THURMAN, | ) | No. ED99619 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| vs. | ) | |
| | ) | Honorable Kenneth W. Pratte |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED:  March 11, 2014 |

Introduction

Jeffrey Thurman ("Thurman") appeals from the judgment of the motion court denying his

motion for post-conviction relief under Rule 24.035[1] without an evidentiary hearing.  The State

of Missouri charged Thurman as a prior offender with one count of first-degree murder, Section

565.020,[2] and two counts of Class C felony stealing, Section 570.030.  Thurman accepted a plea

agreement in which he pleaded guilty to one count of first-degree murder and accepted a life

sentence without parole in exchange for the State's withdrawal of its intent to seek the death

penalty and dismissal of the two stealing counts.  Following his guilty plea, Thurman filed a

motion seeking post-conviction relief alleging that plea counsel were ineffective in failing to

obtain a pre-trial determination of whether Thurman's level of mental functioning rendered him

___

[1] All rule references are to Mo. R. Crim. P. (2013).
[2] All statutory references are to RSMo. 2000.

ineligible for the death penalty. Thurman reasons that plea counsel's failure to obtain a determination of his mental disability prior to trial rendered his plea involuntary and unknowing. Because plea counsel's conduct neither affected the voluntariness of Thurman's plea nor subjected Thurman to any prejudice, the motion court committed no clear error in denying Thurman's motion for post-conviction relief. We affirm the judgment of the motion court.

Factual and Procedural History

In January 2007, Thurman was charged with one count of first-degree murder for the murder of Ricky Haynes ("Haynes") and two counts of Class C felony stealing for taking two cars belonging to Haynes. In September 2007, the State filed a notice of aggravating factors in support of the death penalty.

On December 7, 2011, Thurman pleaded guilty to first-degree murder pursuant to a plea agreement with the State. At the plea hearing, Thurman admitted that he knowingly caused the death of Haynes, after deliberation on the matter, by beating and strangling him. Thurman also admitted that he confessed to the crime or made other incriminating statements to law enforcement officers. In exchange for Thurman's guilty plea, the State withdrew its notice of aggravating factors in support of the death penalty and dismissed the two counts of stealing.

When asked how many times Thurman had discussed his case with plea counsel, Thurman agreed it was well over 40 times and further stated that counsel had spent close to 100 hours with him. Thurman also testified that he was satisfied with counsel's assistance, felt he had sufficient time to consult with counsel before pleading guilty, and felt he had been fully informed of all charges and defenses available to him. Thurman stated he had not been threatened or coerced into pleading guilty and acknowledged the rights he was waiving by doing so. Thurman then admitted each element of first-degree murder. The plea court accepted Thurman's guilty plea and sentenced him to life imprisonment without parole.

Thurman filed an amended motion for post-conviction relief pursuant to Rule 24.035 on December 4, 2013. In his amended motion, Thurman alleged that he was denied constitutionally effective assistance of counsel when plea counsel advised Thurman to plead guilty to first-degree murder without a pre-trial determination of whether Thurman was mentally retarded and thus ineligible for the death penalty. Thurman alleged that he provided counsel with medical records documenting his low I.Q. and corresponding mental disability.[3] Thurman also stated that he had been evaluated, at the request of plea counsel, by Dr. Robert Heilbronner. Dr. Heilbronner found that Thurman suffered from cognitive deficits in intellectual functions and administered an I.Q. test, on which Thurman scored a 72. Thurman further stated that plea counsel also requested an examination by Dr. Stephen Greenspan, who found that Thurman met the criteria for mental retardation. Thurman alleged that because the evidence was "relatively clear" that he was mentally retarded, he was categorically ineligible for the death penalty and reasonable counsel would not have advised him to accept a plea agreement that merely offered to waive a punishment he was not eligible to receive. Thurman alleged that plea counsel's ineffectiveness on this issue rendered his guilty plea unknowing and involuntary.[4]

The motion court denied Thurman's amended motion without an evidentiary hearing on January 8, 2013. In its Findings of Fact, Conclusions of Law and Judgment, the motion court concluded that Thurman's ineffective assistance of counsel claim was refuted by the record. In particular, the motion court noted that Thurman's counsel did investigate Thurman's mental

---

[3] Thurman's amended motion alleged that his medical records would show the following: Born in 1985, Thurman experienced seizures as an infant and was found to have asymmetrical ventricles of the brain. At the age of five, Thurman's I.Q. was found to be 75. In 1996, Thurman was found to be of borderline intelligence. In 1998, Thurman was examined and found to "probably have mild MR or significant learning disabilities" and an I.Q. of 67. In 2000, Thurman scored a 79 on a Peabody Picture Vocabulary Test. At the age of 16, Thurman was diagnosed as "mildly mentally retarded" with an I.Q. of 69. In 2003, Thurman was evaluated by a psychologist who found an I.Q. of 71, while an evaluation in 2006 indicated an I.Q. of 69.

[4] Thurman also alleged in his amended motion that a sentence of life imprisonment without the possibility of parole is categorically impermissible for the mentally retarded, an argument that was dismissed by the motion court as having no merit. Thurman does not appeal that portion of the motion court's judgment.

retardation, and the results of that investigation were available to Thurman as he decided whether or not to accept the State's plea offer. The motion court concluded that it could not grant Thurman relief on a claim of ineffective assistance of counsel under circumstances where counsel investigated Thurman's mental retardation, and Thurman ultimately decided not to risk trial, as well as conviction and sentencing, based on that investigation. This appeal follows.

## Point on Appeal

In his sole point on appeal, Thurman argues that the motion court erred in denying his motion for post-conviction relief because he pleaded facts not conclusively refuted by the record demonstrating that plea counsel were ineffective, violating his constitutional right to effective assistance of counsel.[5] Specifically, Thurman posits that his plea counsel's failure to obtain a pre-trial determination of his mentally retardation and corresponding ineligibility for the death penalty rendered his guilty plea involuntary and unknowing.

## Standard of Review

Appellate review of a motion court's denial of a Rule 24.035 motion is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 24.035; Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court, after reviewing the entire record, is left with a "definite and firm impression that a mistake has been made." Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010). After a guilty plea, our review is limited to a determination as to whether the underlying plea was knowing and voluntary. Loudermilk v. State, 973 S.W.2d 551, 553 (Mo. App. E.D. 1998).

---

[5] Although the motion court did not hold an evidentiary hearing, Thurman did not preserve the denial of his request for an evidentiary hearing for appellate review because the issue was not contained within his Point Relied On. See Rule 84.04(d). We therefore do not review whether Thurman was entitled to an evidentiary hearing.

4

The core of Thurman's ineffective assistance claim relates to plea counsel's failure to obtain a pre-trial determination as to whether Thurman is mentally retarded. Thurman suggests that, had counsel obtained a pre-trial determination of his mental disability, he would have then been ineligible for the death penalty under the Eighth Amendment, which prohibits the execution of mentally retarded individuals. Had plea counsel obtained that pre-trial determination, Thurman argues he would not have pleaded guilty pursuant to the State's plea agreement since the death penalty would have already been "off the table" as a possible sentence. Accordingly, Thurman characterizes his plea as involuntary.

The law is well settled that a guilty plea must be a "voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." State v. Roll, 942 S.W.2d 370, 375 (Mo. banc 1997). Our review of a claim of ineffective assistance of counsel following a guilty plea is limited to a determination of whether counsel's ineffectiveness affected the voluntariness of a movant's plea. Wilkins v. State, 802 S.W.2d 491, 497 (Mo. banc 1991). To prevail on a claim ineffective assistance of counsel following a guilty plea, a movant must show by a preponderance of the evidence that: (1) counsel's performance was deficient because he or she failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced the movant as a result. Cherco v. State, 309 S.W.3d 819, 822 (Mo. App. W.D. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

To satisfy the performance prong, a movant must overcome the strong presumption that any challenged action was sound trial strategy. Id. To overcome this presumption, a movant must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell

5

outside the wide range of professional competent assistance." Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009).  In order to show prejudice in a guilty plea case, the movant must prove that, but for the errors of counsel, he would not have pleaded guilty and would have insisted on going to trial.  Roll, 942 S.W.2d at 375; Hill v. Lockhart, 474 U.S. 52, 59 (1985).  In performing the prejudice inquiry, this Court reviews whether the alleged error would have changed the outcome of a trial and thus led counsel to change his or her recommendation as to the plea.  See Hill, 474 U.S. at 59.

Here, we first hold that Thurman has failed to overcome the presumption that plea counsel's advice to accept the State's plea agreement was sound trial strategy.  "Mental retardation" is defined in Section 565.030 as:

> [A] condition involving substantial limitations in general functioning characterized by significantly subaverage intellectual functioning with continual extensive related deficits and limitations in two or more adaptive behaviors such as communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure and work, which conditions are manifested and documented before eighteen years of age.

Section 565.030.5.  "According to the Diagnostic and Statistical Manual of Mental Disorders IV (DSM–IV), a person with an I.Q. of 70 or lower has significantly subaverage intellectual functioning, but it is possible for an individual with an I.Q. between 70 and 75 to be diagnosed as mentally retarded if they exhibit significant deficits in adaptive behavior."  State v. Johnson, 244 S.W.3d 144, 153 (Mo. banc 2008).  However, a person found to possess below average intelligence is not necessarily mentally retarded.  Id.

The evidence that Thurman asserts he would have relied upon relating to his mental functioning and alleged disability is inconclusive.  Given the various levels of intellectual functioning demonstrated by the tests taken by Thurman, the trial court may well have determined that Thurman was not mentally retarded under Missouri law.  Were such a

6

determination made prior to trial, the State may have left death "on the table" as an available sentence in the event of conviction. The plea deal offered by the State was the only guarantee to Thurman that the death penalty was truly "off the table." Given these facts, we are not persuaded that plea counsel's failure to seek a pre-trial determination as to Thurman's mental retardation and recommendation to Thurman to accept the State's plea deal was outside the wide range of professional competent assistance. Rather, counsel's decision to unequivocally eliminate the risk of a death sentence was reasonable trial strategy.

Moreover, we further hold that Thurman was not prejudiced by plea counsel's advice to plead guilty without a pre-trial determination as to his mental retardation. We note that Thurman does not allege in his amended motion that, but for counsel's ineffectiveness, he would not have pleaded guilty and would have demanded trial. See Roll, 942 S.W.2d at 375 (to show prejudice in a guilty plea case, the movant must prove that, but for the errors of counsel, he would not have pleaded guilty and would have insisted on going to trial). Rather, Thurman only alleges that had counsel obtained a pre-trial determination that he was mentally retarded, he "would not have pleaded guilty to the maximum sentence allowable by law." Even presuming Thurman means by this allegation that he would not have pleaded guilty and demanded a trial if not for counsel's ineffectiveness, Thurman nevertheless has failed to prove the requisite prejudice for post-conviction relief.

Section 565.020 mandates that first-degree murder shall be punishable by "either death or imprisonment for life without eligibility for probation or parole." Section 565.020. Therefore, even if Thurman obtained a pre-trial determination that he suffered from mentally retardation, life imprisonment without probation or parole was the only sentence available to Thurman were he found guilty at trial. Given the evidence in the record that Thurman confessed to the crime and made other incriminating statements to law enforcement officers, we are not convinced that

7

the outcome of a trial would have been any different such that Thurman was prejudiced by counsel's recommendation to plead guilty.[6] See Hill, 474 U.S. at 59 (in guilty plea cases, the prejudice inquiry will resemble that performed by courts reviewing ineffective assistance challenges to convictions obtained through a trial – i.e., whether the alleged error would have changed the outcome of a trial and thus led counsel to change his or her recommendation as to the plea).

Thurman has failed to show that he was denied his right to constitutionally effective counsel such that his guilty plea was rendered unknowing or involuntary. Plea counsel's advice to plead guilty in order to remove the death sentence as a possible punishment was a reasonable strategy. Moreover, Thurman was not prejudiced by any alleged errors by plea counsel. Accordingly, we hold that the motion court did not clearly err in denying Thurman's claim for post-conviction relief.

## Conclusion

We affirm the judgment of the motion court.

Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs

---

[6] We also note that although Thurman claims he unwittingly pleaded guilty to the maximum sentence, receiving no benefit for his plea bargain, his argument ignores the two Class C felony stealing charges that were also dropped as a result of pleading guilty.

8